IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

CIVIL ACTION NO.: 3:20-cv-00505

| | |
|---|---|
| ARNOLD B. GREEN, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )  **COMPLAINT AND DEMAND**<br>)  **FOR JURY TRIAL** |
| AMERICAN AIRLINES, INC. | )<br>) |
| Defendant. | )<br>) |

Plaintiff, Arnold B. Green ("Green" or "Plaintiff"), by and through counsel, brings this action for violations of (1) the Family and Medical Leave Act Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq. against Defendant American Airlines, Inc. ("AA" or "Defendant").

## THE PARTIES

1. Green is an adult individual who is a resident of Ormond Beach, Florida.

2. Defendant has employed Green as a Pilot since April 8, 2015. Green was originally hired by US Airways on December 7, 1998. Defendant merged with US Airways on or about December 9, 2013. Green is a Charlotte, North Carolina-based pilot.

3. Defendant is a foreign business corporation registered and in good standing in the State of North Carolina.

## JURISDICTION AND VENUE

4. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 over the subject matter of the claims brought under the FMLA for unlawful interference and retaliation.

5. This Court has personal jurisdiction because Defendants conduct substantial business in Mecklenburg County, North Carolina, which is located within this judicial district.

6. Venue is proper in this judicial district because Defendants have substantial business contacts in this district and because the unlawful acts alleged herein occurred in Mecklenburg County located within this judicial district.

## COVERAGE ALLEGATIONS

7. At all times hereinafter mentioned, Defendant has been an employer within the meaning of the FMLA, 29 U.S.C. § 2611(4).

8. Green is an "eligible employee" within the meaning of the FMLA, as amended by the Airline Technical Corrections Act, 29 U.S.C. § 2611(2)(D), meaning that during the twelve month period prior to March 31, 2020, Green worked or was paid not less than 60 percent of his applicable monthly guarantee and Green worked or was paid for not less than 504 hours.

## PLAINTIFF'S FACTUAL ALLEGATIONS

9. Defendant owns and operates an airline that services domestic and international travelers.

10. Green is a First Officer for Defendant and pilots Airbus 319, 320 and 321 aircraft.

11. Green's mother suffers from a serious health condition within the meaning of 29 C.F.R. § 825.113(a) that requires Green to care for her.

12. At all relevant times, Defendant had knowledge that Green's mother suffers from a serious health condition and that Green provides care for her.

13. Defendant has certified and approved Green's intermittent FMLA leave to care for his mother since 2011.

14. Defendant's pilots are required to participate in recurrent training that consists of classroom and flight simulator training.

15. Pilots who do not successfully complete annual recurrent training are required to participate in additional remedial training before resuming their normal flight duties of piloting Defendant's aircraft.

16. Pilots who are required to participate in remedial training continue to receive pay and benefits.

17. Green participated in recurrent training from January 30 to February 1, 2020, consisting of one-day of classroom training and two-days of simulator training. At the conclusion of Green's recurrent training, Defendant determined that Green participate in additional remedial training.

18. As of February 1, 2020, Defendant classified Green's status as "AQ" or "Paid Awaiting Qualification." Under this status, Defendant paid Green between 80 and 85 hours per month at a rate of $190.41 per hour. Green also accumulated sick and vacation days, plus other health and retirement benefits.

19. Defendant scheduled Green for additional remedial training on February 13 and 14, 2020.

20. Green participated in additional remedial training on February 13, 2020 but was unable to complete the additional remedial training because of illness, which was diagnosed as pneumonia. As of February 13, 2020, Green's status remained "AQ."

21. Defendant rescheduled Green for the additional remedial training from March 22, 2020 to March 24, 2020.

22. Green was unable to attend the additional remedial training scheduled for March 22 to 24 because of his mother's serious health condition. Green timely notified Defendant of his need to utilize FMLA leave to care for his mother and utilized four days of FMLA leave, which Defendant approved. As of March 24, 2020, Green's status remained "AQ."

23. Defendant rescheduled Green for the additional remedial training from April 3 to April 4, 2020.

24. Green was unable to attend the additional remedial training scheduled for April 3 to April 4 because of his mother's serious health condition. Green timely notified Defendant of his need to utilize FMLA leave to care for his mother and utilized two days of FMLA leave, which Defendant approved. As of April 4, 2020, Green's status remained "AQ."

25. Defendant rescheduled Green for the additional remedial training from May 10, 2020 to May 11, 2020.

26. Green was unable to attend the additional remedial training scheduled for May 10 to May 11 because of his mother's serious health condition. Green timely notified Defendant of his need to utilize FMLA leave to care for his mother and utilized two days of FMLA leave, which Defendant approved. As of May 10, 2020, Green's status remained "AQ."

27. Defendant rescheduled Green for the additional remedial training from May 16, 2020 to May 17, 2020.

28. Green was unable to attend the additional remedial training scheduled for May 16 to May 17 because of his mother's serious health condition. Green timely notified Defendant of his need to utilize FMLA leave to care for his mother and utilized two days of FMLA leave, which Defendant approved. As of May 17, 2020, Green's status remained "AQ."

29. Defendant rescheduled Green for the additional remedial training from May 21, 2020 to May 22, 2020

30. Green was unable to attend the additional remedial training scheduled for May 21 to May 22 because of his mother's serious health condition. Green timely notified Defendant of his need to utilize FMLA leave to care for his mother and utilized two days of FMLA leave, which Defendant approved. As of May 21, 2020, Green's status remained "AQ."

31. On June 4, 2020, Defendant notified Green that it was changing his status from "AQ" to "QT," or "Paid Awaiting Training." Upon information and belief, Green remained eligible for the same pay and benefits under "AQ" and "QT" status.

32. On June 4, 2020, Defendant's Chief Pilot, Jeffrey Moore ("Moore"), telephoned Green. Moore informed Green that Defendant would place Green on unpaid "QE" status if he utilized FMLA leave again when scheduled for recurrent training.

33. Immediately following this phone call, Green sent Moore a text stating: "Hi Jeff. I received your call a couple of minutes ago. To verify what you said, did you just tell me that the Company lawyers had [sic] instructed you to inform me that if I use FMLA to take care of my mother, when I'm scheduled for simulator training next week, the Company will unilaterally change my pay status from 'paid to unpaid status'? Please acknowledge by return text that this is what you said?"

5

34. Moore responded via text: "No Arnie. That is not what I am saying at all. We will continue to approve your requested FMLA and grant you the time off you need to care for your mother. What I have said is that you are required to remain qualified. I am happy to work with you to find time to schedule your training around your needed FMLA but what you have told me is that you are not willing to do so. If you are not willing to stay qualified, then you are not eligible for pay. If I am mistaken or have misunderstood, please respond via text with dates you can commit to for training in the near future. Jeff."

35. Green responded via text: "Good Evening Jeff. There seems to be a misunderstanding on the Company's perception regarding my willingness to be qualified. I don't have any record or recollection of me ever stating to anyone, that 'I did not want to stay and/or be fully qualified'. To be perfectly clear, so that there is no misunderstanding, I want to stay and be fully qualified. The Company can schedule me for training whenever they want, as they have always done in the past. Respectively, Arnie."

36. Defendant rescheduled Green for the additional remedial training from June 8, 2020 to June 9, 2020.

37. Green was unable to attend the additional remedial training scheduled for June 8 to June 9 because of his mother's serious health condition. Green timely notified Defendant of his need to utilize FMLA leave to care for his mother and utilized two days of FMLA leave, which Defendant approved. As of June 9, 2020, Green's status was "AT."

38. On June 9, 2020, Defendant changed Green's status from "AT" to "QE" status. Under "QE" status, Defendant ceased paying Green at his hourly rate. Green also was no longer eligible to accumulate sick and vacation days.

39. Defendant placed Green on "QE" status in retaliation for utilizing protected FMLA leave, which resulted in Defendant ceasing to pay Green compensation and benefits that he would otherwise be entitled to during recurrent training status.

40. Defendant interfered with Green's protected FMLA leave by threatening him with repercussions for utilizing FMLA leave; i.e. unpaid status.

41. During the six-month period prior to this lawsuit, Defendant employed and continues to employ numerous pilots who have been reassigned to different aircraft. These reassignments require that these pilots attend classroom and/or simulator training for these different aircraft before resuming their normal flight duties. For many of these pilots, Defendant has not scheduled this required training to begin until late 2020 or early 2021. These pilots who are awaiting training are not currently piloting planes for Defendant, but are instead placed in "AT" status and continue to be paid pursuant to Defendant's normal pay practices.

## COUNT I

### (Violation of FMLA - Interference)

42. Green incorporates by reference paragraphs 1-41 of his Complaint.

43. Count I arises from Defendant's unlawful interference with Green's rights under the FMLA.

44. Defendant's actions were intentional, willful and/or taken with reckless disregard of Green's rights under the FMLA.

45. Green suffered damages as a result of Defendant's unlawful conduct.

## COUNT II

### (Violation of FMLA - Retaliation)

46. Green incorporates by reference paragraphs 1 through 45 of his Complaint.

47. Count II arises from Defendant's unlawful decision to change Green's employment status to "QE," which resulted in the loss of pay and benefits.

48. Defendant's actions were intentional, willful and/or taken with reckless disregard of Green's rights under the FMLA.

49. Green suffered damages as of result of Defendant's unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Green demands the following relief:

a) An Order pursuant to the FMLA that Defendant reinstate Green to paid employment status with the same seniority, benefits and wages Green was entitled to prior to Defendant's unlawful conduct;

b) An Order pursuant to the FMLA that Defendant pay Green all lost wages, benefits, compensation, and monetary loss suffered because of Defendant's unlawful actions;

c) An Order pursuant to the FMLA that Defendant pay Green liquidated damages;

d) An Order awarding the costs of this action;

e) An Order awarding reasonable attorneys' fees;

f) An Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law; and

g) An Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

/s/ Jason S. Chestnut

Jason S. Chestnut NCSB #52066
Craig L. Leis, NCSB #48582
Philip J. Gibbons, Jr., NCSB #50276


GIBBONS LEIS, PLLC
14045 Ballantyne Corporate Place, Ste 325
Charlotte, North Carolina 28277
Telephone:     (704) 612-0038

E-Mail:  jason@gibbonsleis.com
         craig@gibbonsleis.com
         phil@gibbonsleis.com