# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:20-CV-505-DCK

| | |
|---|---|
| **ARNOLD B. GREEN,** | )<br>) |
| **Plaintiff,** | )<br>) |
| v. | )     **ORDER**<br>) |
| **AMERICAN AIRLINES, INC.,** | )<br>) |
| **Defendant.** | )<br>) |

**THIS MATTER IS BEFORE THE COURT** on "Defendant's Motion For Summary Judgment" (Document No. 26). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and this motion is now ripe for disposition. Having carefully considered the motion, the record, and applicable authority, the undersigned will grant the motion.

## I.     BACKGROUND

Arnold B. Green ("Plaintiff" or "Green") initiated this action with the filing of a "Complaint…" (Document No. 1) on September 11, 2020. The Complaint alleges violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.* against American Airlines, Inc. ("Defendant" or "AA") for allegedly interfering with "Green's rights under the FMLA" and for retaliating against him by changing his employment status to result in the loss of pay and benefits. (Document No. 1, pp. 7-8).

According to the Complaint, Plaintiff Green was originally hired by US Airways as a pilot on December 7, 1998. (Document No. 1, p. 1). After US Airways merged with Defendant AA, Plaintiff continued his employment as a pilot with AA. Id. During the course of Plaintiff's employment with AA, Defendant knew that Plaintiff's mother suffered from a serious health

condition that required Plaintiff to care for her. (Document No. 1, p. 3). "Defendant has certified and approved Green's intermittent FMLA leave to care for his mother **since 2011**." Id. (emphasis added).

The Complaint also explains that Defendant AA's "pilots are required to participate in recurrent training that consists of classroom and flight simulator training." Id. After Plaintiff participated in training from January 30 to February 1, 2020, Defendant determined that he needed "additional remedial training." Id. Defendant then classified Plaintiff's status as "AQ" or "Paid Awaiting Qualification," a status that allowed Plaintiff to continue to receive pay and benefits. Id.

Between February and May 2020, Defendant scheduled Plaintiff for remedial training six (6) times, but Plaintiff was unable to complete the training due to illness or taking FMLA leave to care for his mother. (Document No. 1, pp. 4-5). On June 4, 2020, Defendant's Chief Pilot Jeffrey Moore ("Moore") telephoned Plaintiff and informed him that he would be placed on "unpaid or "QE" status if he utilized FMLA leave again when scheduled for recurrent training." (Document No. 1, p. 5). The Complaint then describes the following interaction between Plaintiff and Captain Moore:

> 33. Immediately following this phone call, **Green sent Moore** a text stating: "Hi Jeff. I received your call a couple of minutes ago. To verify what you said, did you just tell me that the Company lawyers had [sic] instructed you to inform me that if I use FMLA to take care of my mother, when I'm scheduled for simulator training next week, the Company will unilaterally change my pay status from 'paid to unpaid status'? Please acknowledge by return text that this is what you said?"
>
> 34. Moore responded via text: "No Arnie. That is not what I am saying at all. We will continue to approve your requested FMLA and grant you the time off you need to care for your mother. What I have said is that you are required to remain qualified. I am happy to work with you to find time to schedule your training around your needed FMLA but what you have told me is that you are not willing

2

>     to do so. If you are not willing to stay qualified, then you are not
>     eligible for pay. If I am mistaken or have misunderstood, please
>     respond via text with dates you can commit to for training in the near
>     future. Jeff."
>
>     35. Green responded via text: "Good Evening Jeff. There
>     seems to be a misunderstanding on the Company's perception
>     regarding my willingness to be qualified. I don't have any record or
>     recollection of me ever stating to anyone, that 'I did not want to stay
>     and/or be fully qualified'. To be perfectly clear, so that there is no
>     misunderstanding, I want to stay and be fully qualified. **The
>     Company can schedule me for training whenever they want**, as
>     they have always done in the past. Respectively, Arnie."

(Document No. 1, pp. 5-6) (emphasis added).

"Defendant rescheduled Green for the additional remedial training from June 8, 2020 to June 9, 2020," and Plaintiff was *again* unable to attend due to his mother's serious health condition. (Document No. 1, p. 6). On June 9, 2020, Defendant changed Plaintiff's "status from "AT" to "QE" status . . . [and] ceased paying Green his hourly rate." Id.

The crux of Plaintiff's Complaint is that Defendant placed him on "QE" status in retaliation for utilizing protected FMLA leave, which resulted in ceasing "compensation and benefits that he would otherwise be entitled to during recurrent training status." (Document No. 1, p. 7).

"Defendant's Answer And Defenses To Plaintiff's Complaint" (Document No. 3) were filed on October 19, 2020. On November 9, 2020, the parties filed a "Certification And Report Of F.R.C.P. 26(f) Conference…" (Document No. 7) and a "Joint Stipulation of Consent to Exercise Jurisdiction by a United States Magistrate Judge" (Document No. 8). The undersigned issued a "Pretrial Order And Case Management Plan" (Document No. 12) that included the following deadlines: discovery completion – June 1, 2021; mediation report – June 16, 2021; and dispositive motions – July 1, 2021. Those deadlines were later extended. See (Document Nos. 17, 18, 20, 22, 24, and 25).

Following a mediation attempt that resulted in an impasse, "Defendant's Motion For Summary Judgment" (Document No. 26) was timely filed on November 12, 2021. The motion for summary judgment has now been fully briefed and is ripe for review and disposition. See (Document Nos. 27, 30, 31, and 32).

## II. STANDARDS OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Only disputes between the parties over material facts (determined by reference to the substantive law) that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id.

Once the movant's initial burden is met, the burden shifts to the nonmoving party. Webb v. K.R. Drenth Trucking, Inc., 780 F.Supp.2d 409 (W.D.N.C. 2011). The nonmoving party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248. In deciding a motion for summary judgment, a court views the evidence in the light most favorable to the non-moving party, that is, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

A motion to dismiss under Rule 12(b)(1) seeks to dismiss a complaint for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). The plaintiff has the burden of proving that subject matter jurisdiction exists. See Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). "The subject matter jurisdiction of federal courts is limited and the federal courts may exercise only that jurisdiction which Congress has prescribed." Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).

### III. DISCUSSION

Defendant AA asserts two alternate grounds for the termination of this lawsuit. (Document No. 26).

First, Defendant contends that this action should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. Defendant argues that pursuant to the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 *et seq.*, the question of whether or not Defendant improperly moved Plaintiff from paid to unpaid status requires interpretation of the collective bargaining agreement ("CBA") between Defendant AA and the Allied Pilots Association ("APA"). (Document No. 26, p. 1; Document No. 27, pp. 1-2). According to Defendant, "the CBA provides that only the System Board of Adjustment ("SBA") has jurisdiction to resolve Green's grievance." (Document No. 27, p. 2). Defendant notes that "[a] court must dismiss an action if it determines at any time that it lacks subject matter jurisdiction." (Document No. 27, p. 10) (citations omitted).

Defendant also notes that Plaintiff demonstrated his awareness "that his pay claims are governed exclusively by the dispute resolution process set forth in the CBA" by filing a "virtually-

5

identical grievance" alleging violation of Sections 6.B.6 and 6.B.9 of the CBA (or JCBA) based on the change of his pay status. (Document No. 27, p. 2); see also (Document Nos. 27-2 and 27-4).[1]

"Second, and alternatively," Defendant contends that summary judgment is appropriate pursuant to Fed.R.Civ.P. 56 because Plaintiff "has no evidence to support his claims that American interfered with his FMLA rights or retaliated against him for his use of FMLA leave." (Document No. 26, p. 1); see also (Document No. 27, p. 1).

**A. Jurisdiction**

Defendant AA first argues that Plaintiff's "entire lawsuit rests on the notion that American [Airlines] did not follow the CBA [therefore], Green's claim is a classic 'minor dispute' under the RLA." (Document No. 27, p. 10). "Minor disputes can be adjudicated only under the RLA," and accordingly "must be submitted to compulsory arbitration by an adjustment board, which has exclusive jurisdiction to decide minor disputes." (Document No. 27, p. 11) (quoting Empresa Ecuatoriana De Aviacion, S.A., v. Dist. Lodge No. 100, 690 F.2d 838, 844 (11th Cir. 1982)).

Defendant notes that minor dispute preemption is broader than routine CBA-based disputes between labor and airline management because it "also encompasses claims brought by individual employees against their air carrier employers that arise from or just require interpretation of a CBA." Id. (citing Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246 (1994); Lee v. Norfolk S. Ry. Co., 1:11-CV-245-MR, 912 F.Supp.2d 375, 380 (W.D.N.C. 2012); Davis v. American Airlines,

---

[1] According to "Defendant's Memorandum…" American Airlines denied Plaintiff's grievance and it is "awaiting arbitration before the SBA." (Document No. 27, p. 9) (citing Document No. 27-1, p. 3 and Document No. 27-3, pp. 61-62).

6

No. 3:19-CV-044-MOC-DSC, 2019 WL 2719909, at *3-5 (W.D.N.C. June 28, 2019); <u>Caldwell v. Norfolk S. Corp.</u>, No. 96-CV-443-P, 1998 WL 1978291, at *3 (W.D.N.C. Mar. 3, 1998)).

Defendant asserts that for this Court to find an alleged FMLA violation, it must accept that Plaintiff Green is contractually entitled to the pay and benefits he was denied by Defendant when he was not qualified to fly. (Document No. 27, p. 12). However, Defendant argues that it is "solely the CBA that governs Green's entitlement to pay" and that employers are not required to pay employees for FMLA leave. <u>Id.</u> Moreover, any decision by this Court on Plaintiff's alleged damages "would effectively be ruling on Green's grievance currently pending before the SBA." (Document No. 27, p. 12); <u>see also</u> (Document No. 27-4).

Defendant concludes that Plaintiff's claims "cannot be resolved without interpreting the parties' CBA," and therefore, "this Court must relinquish jurisdiction." (Document No. 27 p. 14).

In response, Plaintiff acknowledges that a "court lacks subject matter jurisdiction over minor disputes because they are subject to mandatory arbitration under the RLA" and that "[m]inor disputes are those 'growing out of grievances or out of interpretation of agreements concerning rates of pay, rules, or working conditions.'" (Document No. 30, p. 8) (citing <u>Hawaiian Airlines, Inc.</u>, 512 U.S. at 252; and quoting 45 U.S.C. §153). Nevertheless, Plaintiff argues that his claim here is not precluded because it is "independent of" the CBA. <u>Id.</u>[2] Plaintiff contends that whether Defendant "violated the FMLA depends on a simple factual inquiry into Moore's motives for threatening Green and then placing Green on QE or unpaid status" – "whether Moore's motivation was retaliatory cannot be resolved by interpreting the CBA." <u>Id.</u>

---

[2] Plaintiff's response notes that he "elects to proceed only with Count II of his Complaint, which alleges retaliation under the FMLA," and "abandons Count I of his Complaint, which alleges interference under the FMLA." (Document No. 30, p. 2, n. 1).

Plaintiff does not dispute that FMLA leave is unpaid or that Chief Pilot Moore had the discretion to change Plaintiff's pay status. See (Document No. 30, pp. 2, 9). Rather, "Green's FMLA retaliation claim turns solely on Moore's motivation and conduct." Id. In fact, Plaintiff states that "[f]or purposes of the lawsuit, Green does not allege that American violated the collective bargaining agreement ("CBA") or that any provisions of the CBA infringes on his rights under the FMLA."[3] (Document No. 30, p. 2).

Plaintiff notes that Defendant has failed to cite any "cases in which a court has held that the RLA preempts an FMLA claim arising from an employer's alleged retaliatory motive or conduct." (Document No. 30, p. 9). To his credit, Plaintiff identifies cases coming out on both sides of the preemption question, though he contends an overwhelming number hold that the RLA does not preclude an FMLA claim alleging retaliatory motive or conduct. (Document No. 30, pp. 9-10) (citations omitted).

Plaintiff contends that his FMLA retaliation claim is separate and distinct from the CBA, and that his claim(s) before this Court does not preclude seeking a potential CBA-based remedy. (Document No. 30, p. 11). Therefore, "this Court has subject matter jurisdiction to hear Green's FMLA claims." (Document No. 30, p. 12).

"Defendant's Reply…" asserts that Plaintiff's claim "is inextricably intertwined with rights that exist under his CBA, namely his entitlement to pay while awaiting training," which "is governed exclusively by his CBA." (Document No. 32, p. 1). Defendant argues that "[P]laintiff cannot avoid RLA preemption by careful pleading . . . if resolving any aspect of the claim requires

---

[3] Plaintiff's "Grievance No. 20-093…," submitted to Captain Jeff Moore the same day the Complaint was filed, alleges that "[t]his change in my status is a violation of Section 6.B.6 and 6.B.9. of the JCBA." (Document No. 27-4, p. 2).

8

the Court to interpret a provision of a CBA, then it is preempted." (Document No. 32, p. 3) (citing Brown v. Ill. Cent. R.R., 254 F.3d 654, 668 (7th Cir. 2001) (explaining that if a federal claim depends on the interpretation of a CBA for its resolution, then the claim is not independent of the CBA, regardless of its source, and is precluded by the RLA)). Defendant notes that it has cited several decisions, "including three (3) from this Court, in which resolution of federal statutory claims required interpretation of a CBA, and thus, were preempted under the RLA." Id. (citing Document No. 27, pp. 11-12).

Defendant insists that the issue in this case, "which is governed exclusively by the CBA," "is whether Green is entitled to pay for time spent at home, on FMLA leave, while awaiting training and not qualified to fly." (Document No. 32, p. 3). Defendant further notes that Plaintiff acknowledges that "courts *have* held an FMLA claim requiring interpretation of CBA provisions is preempted under the RLA and subject to mandatory arbitration." (Document No. 32, pp. 3-4) (citations omitted).

In conclusion, Defendant argues that "in order to reach the question of FMLA retaliation, this Court must first rule upon the threshold issue of whether the underlying conduct was an adverse employment action or a contractually permitted required/permitted action." (Document No. 32, p. 6). "To rule on Green's FMLA claim is to impermissibly deprive the SBA of its jurisdiction to rule on Green's grievance." Id.

The undersigned finds the Honorable Max O. Cogburn, Jr.'s discussion of RLA preemption in Davis v. American Airlines to be instructive here.

> Because American Airlines is a passenger air carrier, the RLA governs its labor practices. See 45 U.S.C. § 181. Congress passed the RLA to promote stability in the transportation industry by providing a comprehensive and exclusive framework for resolving

9

> labor disputes. See Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252 (1994).
>
> . . .
>
> Courts addressing issues of RLA preclusion divide labor disputes into two categories: "major disputes" and "minor disputes." See Hawaiian Airlines, 512 U.S. at 252. The terms "major" and "minor" have nothing to do with the importance of the issue to the disputants. "Major disputes" involve the formation of collective bargaining agreements. Id. "Minor disputes" are disputes arising from the interpretation or application of a collective bargaining agreement. Id. at 252-53. In other words, "major disputes seek to create contractual rights, minor disputes to enforce them." Id. at 253. Minor disputes "must be resolved only through the RLA mechanisms, including the internal dispute-resolution processes and an adjustment board established by the employer and the union[ ]." Hawaiian Airlines, 512 U.S. at 253 (citing 45 U.S.C. § 184); see also Williams v. Air Wisconsin, Inc., 874 F.Supp. 710, 715 (E.D. Va. 1995) ("The RLA vests in the System Board of Adjustment exclusive jurisdiction over 'minor' disputes such as breach of collective bargaining agreements."), aff'd, 74 F.3d 1235 (4th Cir. 1996). Thus, the adjustment boards mandated by the RLA have mandatory, exclusive, and comprehensive jurisdiction over disputes arising from the interpretation or application of collective bargaining agreements in the airline industry. See Hawaiian Airlines, 512 U.S. at 252-53.
>
> If a plaintiff's claims require the interpretation or application of a collective bargaining agreement, the claims are preempted by the RLA regardless of whether the legal basis for the claims arise from a source other than the collective bargaining agreement.

Davis v. Am. Airlines, No. 3:19-CV-044-MOC-DSC, 2019 WL 2719909, at *4 (W.D.N.C. June 28, 2019), aff'd Davis v. Am. Airlines, Inc., 792 Fed. Appx. 265 (4th Cir. 2020).

The issue of preemption presents an interesting and close call. However, the undersigned finds Defendant's position in favor of preemption to be more persuasive. In short, review of Plaintiff Green's Complaint shows that the Court cannot award the relief he seeks – "employment status with the same seniority, benefits and wages Green was entitled to prior to Defendant's

unlawful conduct" – without a finding that he was entitled to pay and benefits even when he was not qualified to fly. See (Document No. 1, pp. 7-8). That determination, as discussed above, rests exclusively with the SBA. See Davis, 2019 WL 2719909, at *4.

Importantly, even *if* preemption should *not* be applied here, the undersigned finds that Plaintiff's claim still fails and that the Court must enter judgment in favor of Defendant.

**B. Retaliation**

Assuming jurisdiction is appropriate before this Court, Defendant presents a compelling argument that Plaintiff's claim for retaliation fails.

To succeed on a claim of retaliation, a plaintiff must show "that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity." Sharif v. United Airlines, Inc., 841 F.3d 199, 203 (4th Cir. 2016) (citing Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 551 (4th Cir. 2006) (quoting Cline v. Wal–Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998)).

> Intent can be established either by direct evidence of retaliation or through the familiar burden shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800–06, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Laing v. Fed. Exp. Corp., 703 F.3d 713, 717 (4th Cir. 2013); Yashenko, 446 F.3d at 551. Under the latter framework, a plaintiff must first produce sufficient evidence to establish a prima facie case that the elements of retaliation are satisfied. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817. The burden of production then shifts to the employer to rebut the prima facie presumption of retaliation and provide "some legitimate, nondiscriminatory reason" for the adverse employment action. Id.; see Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253–55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the employer meets this burden, the presumption of retaliation is dissolved and the plaintiff resumes the burden of persuading the factfinder that the employer's proffered explanation is merely a pretext for discrimination. St. Mar's Honor Ctr. v. Hicks, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); Burdine, 450 U.S. at 256, 101 S.Ct. 1089; McDonnell Douglas, 411 U.S. at 804, 93 S.Ct. 1817. A plaintiff

> may satisfy this burden by showing either that the employer's explanation is not credible, or that the employer's decision was more likely the result of retaliation. Reeves, 530 U.S. at 143, 120 S.Ct. 2097; Burdine, 450 U.S. at 256, 101 S.Ct. 1089. In any event, the plaintiff must produce sufficient evidence to create a genuine dispute of material fact such that a reasonable factfinder could conclude the adverse employment action was taken for an impermissible reason, i.e., retaliation. Reeves, 530 U.S. at 143, 148–49, 120 S.Ct. 2097; Hicks, 509 U.S. at 510–11, 113 S.Ct. 2742; Burdine, 450 U.S. at 253, 101 S.Ct. 1089.

Sharif v. United Airlines, Inc., 841 F.3d at 203.

In support of summary judgment, Defendant AA contends that Plaintiff Green cannot establish a *prima facie* claim for FMLA retaliation because there is no causal relationship between his FMLA leave and the change to unpaid status. (Document No. 27, pp. 18-19). Defendant notes that "Green must proffer evidence that he was placed in an unpaid status 'because [he] engaged in protected activity.'" (Document No. 27, p. 19) (quoting Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998)).

Defendant first argues that the timing of the underlying events here make any causal connection highly unlikely. Id. Defendant notes that Plaintiff Green had been using intermittent FMLA leave for **nine years** at the time he was placed in an unpaid status; and in 2020, he had repeatedly used FMLA for three months before his status was changed to unpaid. Id. (emphasis added) (citations omitted). Following that historical context, Defendant suggests that Plaintiff's claim of retaliation is based solely on speculation. (Document No. 27, p. 20). Without more, such speculation is insufficient to avoid summary judgment. Id. (citing Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) ("Unsupported speculation is not sufficient to defeat a summary judgment motion").

12

Case 3:20-cv-00505-DCK Document 37 Filed 02/02/22 Page 12 of 17

Next, Defendant argues that even if Plaintiff Green was able to establish a *prima facie* case of retaliation, he cannot show that Defendant AA's "legitimate, non-discriminatory reason for placing him in an unpaid status was pretextual and unworthy of belief." (Document No. 27, p. 20). Defendant asserts that "Green was placed on unpaid status because he repeatedly called off scheduled training and remained in an unqualified-to-fly status for an extended period of time." Id. (citing Document No. 27-1, p. 3).

According to Defendant, it requires all pilots to complete training to remain qualified to fly in accordance with the CBA, and if they are unable to fly because they are not qualified, they are placed "in a paid Awaiting Training ("AT") or Awaiting Qualification ("AQ") status until they are able to attend scheduled training." (Document No. 27, p. 20) (citing Document No. 27-1, pp. 2-3; Document No. 27-2, p. 7; Document No. 27-12, p. 2). "If, for whatever reason, the pilot is unable or unwilling to attend the scheduled training in order to get qualified[,] through no fault of American, the pilot is placed in an unpaid ("QE") status." Id. (citing Document No. 27-12, pp. 2-3). Defendant avers that it only moved Plaintiff to unpaid status after he repeatedly failed to attend scheduled training events and advised AA that he could not commit to any training dates. (Document No. 27, p. 21) (citations omitted). Defendant states this action was finally taken to ensure compliance with the CBA requirement that Plaintiff Green remain qualified to fly – and is a legitimate, non-discriminatory reason to move him to unpaid status. Id.

Defendant also argues that Plaintiff has failed to proffer any evidence that its reason for placing him on unpaid status was pretextual or otherwise unworthy of belief. (Document No. 27, p. 22). Defendant notes that Plaintiff has the burden to "present evidence 'both that the employer's reason was false and that retaliation was the real reason for the challenged conduct.'" Id. (quoting Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 252 (4th Cir. 2015)). Moreover, Plaintiff has not

13

identified any evidence that Defendant treated similarly-situated pilots better than Green. (Document No. 27, p. 23). "In contrast, Defendant has identified seven (7) other pilots who were placed in unpaid ("QE") status under the same facially-neutral practice – removed from paid status after calling off scheduled training, through no fault of American, and remaining unqualified." Id. (citing Document No. 27-12, pp. 3-4).

In response, Plaintiff first asserts that Captain Jeffrey Moore's "statements and conduct are direct evidence of retaliatory conduct." (Document No. 30, p. 13). The "statement" Plaintiff most heavily relies on – quoting it in the Complaint and repeatedly in his "…Memorandum In Opposition… – is actually not even a statement by Moore, but a text sent *by* Plaintiff *to* Moore. See (Document No. 1, p. 5; Document No. 30, pp. 3, 9, 15, 19); see also (Document No. 30-3). The quote mistakenly attributed to Moore is the following:

> **"if [you] use FMLA to take care of [your] mother, when [you are] scheduled for simulator training next week, the company will unilaterally change [your] pay status from 'paid to unpaid status,'"**

(Document No. 30, p. 3, 9, 15, 19) (emphasis in original).

Remarkably, Plaintiff describes the foregoing as "a textbook example of direct evidence of FMLA retaliation," a threat by Moore, and "the proverbial 'posterchild' for direct evidence." (Document No. 3, p. 21) (Compare Document No 1, pp. 5-6; Document No. 30-3). Not only did Moore not draft the foregoing statement or send it to Plaintiff, as the Complaint shows, Moore responded by stating: "No, Arnie. That is not what I'm saying at all." (Document No. 1, p. 6).

Plaintiff further argues in his opposition brief that he can establish a retaliation claim under the McDonnell Douglas burden-shifting framework – although he contends that because he has presented "direct evidence of FMLA retaliation," he does not have to proceed under McDonnell

14

Douglas. (Document No. 30, pp. 16). Plaintiff argues that a causal connection is easily established through temporal proximity. (Document No. 30, p. 17). Plaintiff seems to state that within one day of his protected activity (notice of FMLA leave) he was threatened by Moore and/or put on unpaid status. Id.

Plaintiff goes on to assert that Defendant cannot prove a non-discriminatory explanation for its adverse action. (Document No. 30, p. 18). Plaintiff suggests that Defendant's policy was not consistent or uniformly applied because it allowed him to stay on paid status after at least five failures to complete training, and that the seven comparators identified by Defendant were all placed on unpaid status for reasons other than FMLA leave. (Document No. 30, p. 19) (citing Document No. 27-12, pp. 3-4).

In reply, Defendant argues that Plaintiff has produced no true direct evidence of retaliation and that "his hallmark piece of 'evidence' is a gross misrepresentation of the record and not at all what he suggests." (Document No. 32, p. 6). As noted above, Defendant observes that Plaintiff's "evidence" was written by Green, not Captain Moore, and is not an accurate memorialization of the parties' conversation. (Document No. 32, p. 7). Defendant also contends that Plaintiff's other pieces of evidence are taken out of context. (Document No. 32, p. 8).

Contrary to Plaintiff's allegations, Defendant asserts that Captain Moore's testimony shows that Plaintiff was moved to unpaid status for not fulfilling his obligation under the CBA to remain current and qualified, and because Plaintiff was clear that he was not going to be available to attend training to get qualified. (Document No. 32, p. 10) (citations omitted).

Defendant further asserts that it is undisputed that Plaintiff was treated better than all the seven (7) comparator pilots, and that Plaintiff "*has not identified a single pilot who was unqualified*

15

*and repeatedly called off training yet was maintained in paid status longer than he was*." (Document No. 32, pp. 13, 15).

In conclusion, Defendant argues that the "record evidence demonstrates American applied to Green its facially-neutral and uniformly-applied practice of moving pilots to an unpaid status when they are unavailable for training, through no fault of American, and remain unqualified" to fly. (Document No. 32, p. 17). Defendant notes that "Green has failed to produce sufficient evidence to create any genuine dispute of material fact such that a reasonable factfinder could conclude that his move to unpaid status was taken for FMLA retaliation." Id.

Unlike Defendant's first argument for 12(b)(1) dismissal based on preemption, the undersigned does *not* find that Defendant's second argument – applying Rule 56 and the McDonnell Douglas standard – presents a close call.

First, the undersigned finds that the "temporal proximity" argument favors Defendant. The undisputed fact that Defendant allowed Plaintiff FMLA leave for nine (9) years and only moved him to unpaid status in 2020 after he repeatedly failed to get the training necessary to remain qualified to fly, supports Defendant's position that its actions were not retaliation.

Second, Plaintiff's reliance on a statement that he misleadingly attributes to Captain Moore and then repeatedly argues is "direct evidence" of retaliation undermines his position. The undersigned cannot imagine that a reasonable jury could find Plaintiff's own text message to be "direct evidence" of retaliation by Defendant.

Finally, Defendant's application of the McDonnell Douglas analysis is far more compelling. In most pertinent part, Defendant has persuasively presented a legitimate non-discriminatory reason for its conduct and Plaintiff has completely failed to show any evidence that would allow a reasonable jury to find "that the employer's explanation is not credible, or that the

16

employer's decision was more likely the result of retaliation." Sharif v. United Airlines, Inc., 841 F.3d at 203 (citing Reeves, 530 U.S. at 143; Burdine, 450 U.S. at 256).

Based on the foregoing, the undersigned finds that even viewing the evidence in the light most favorable to Plaintiff he has not set forth specific facts showing there is a genuine issue for trial.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that "Defendant's Motion For Summary Judgment" (Document No. 26 ) is **GRANTED**.

Signed: February 2, 2022

David C. Keesler
United States Magistrate Judge